UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

     v.                                   **DECISION AND ORDER**
                                          09-CR-135S (2)

MOHAMED TAHER,

                    Defendant.

# I.  INTRODUCTION

On July 11, 2013, a jury convicted Defendant Mohamed Taher of engaging in a continuing criminal enterprise, conspiring to distribute marijuana, conspiring to import marijuana, making a false statement, and committing aggravated identity theft.  The jury acquitted Taher's codefendant, Kaleel Albanna, of all charges against him.  Taher now moves for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure or, alternatively, for a new trial under Rule 33.  For the reasons discussed below, Taher's motion is denied.

# II.  BACKGROUND

On April 27, 2011, a federal grand jury returned a six-count Third Superseding Indictment against Taher.[1]  (Docket No. 197.)  Count 1 charged Taher with engaging in a continuing criminal enterprise between January 2006 and May 2007, in violation of 21 U.S.C. § 848(a).  Counts 2 and 3 charged Taher with conspiring to distribute (Count 2) and conspiring to import (Count 3) 100 kilograms or more of marijuana during the same time

---

[1]The trial jury received a redacted copy of this indictment.  (See Docket No. 430.)  Although the filed copy of the redacted indictment contains a handwritten "redacted" notation on it for identification purposes, the copy provided to the jury did not contain this notation or any other indication that the indictment was redacted.

period, in violation of 21 U.S.C. §§ 846 and 963.  Count 4 charged Taher with bulk cash smuggling on or about January 6, 2006, in violation of 31 U.S.C. §§ 5332 (a)(1) and (b) and 18 U.S.C. § 2.  Count 5 charged Taher with making a false statement on April 14, 2007, in violation of 18 U.S.C. § 1001 (a)(2).  Count 6 charged Taher with aggravated identity theft on April 14, 2007, in violation of 18 U.S.C. § 1028A (a)(1).

Trial began on June 13, 2013, and concluded on July 11, 2013.  Upon the close of the government's proof, this Court denied Taher's Rule 29 motion.  (Docket No. 421.)  The jury subsequently found Taher guilty on Counts 1, 2, 3, 5, and 6.  (Docket No. 431.)  It acquitted him on Count 4.  (Id.)  As to Counts 2 and 3, the jury found that Taher conspired to distribute, and conspired to import, at least 50 kilograms but less than 100 kilograms of marijuana, as opposed to the 100 kilograms or more of marijuana charged in the indictment.  (Id.)  Albanna was acquitted of all charges against him.  (Id.)

Taher timely filed the instant motion for judgment of acquittal or, alternatively, for a new trial, on September 6, 2013.

## III.  DISCUSSION

**A.    Taher's Rule 29 Motion**

**1.    Rule 29 of the Federal Rules of Criminal Procedure**

Under Rule 29 (a), a court must, upon a defendant's motion, "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  A defendant may move for a judgment of acquittal after the government closes its evidence, after the close of all evidence, or after the jury has returned its verdict and been discharged.  See Rule 29 (a) and (c)(1).  A defendant may also renew a previously denied

Rule 29 motion, so long as renewal occurs within 14 days after the guilty verdict or discharge of the jury, whichever is later.  See Rule 29 (c)(1).

The making of a motion for a judgment of acquittal before the court submits the case to the jury is not a prerequisite for making such a motion after the jury is discharged.  See Rule 29 (c)(3).  "[W]hen a motion for judgment of acquittal made at the close of the government's case-in-chief is denied and a defendant presents a case, then the evidence put in by the defense will also be considered in deciding a [Rule 29] motion made after the trial ends."  United States v. Truman, 762 F. Supp. 2d 437, 445 (N.D.N.Y. 2011).

A defendant challenging the sufficiency of the evidence bears a heavy burden.  United States v. Hassan, 578 F.3d 108, 126 (2d Cir. 2008); United States v. Finley, 245 F.3d 199, 202 (2d Cir. 2001).  "In evaluating whether the evidence was sufficient to convict a defendant, [a reviewing court] consider[s] all of the evidence, both direct and circumstantial, 'in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government.'" United States v. Velasquez, 271 F.3d 364, 370 (2d Cir. 2001) (quoting United States v. Walker, 191 F.3d 326, 333 (2d Cir. 1999)).

When considering the trial evidence, "the court must be careful to avoid usurping the role of the jury." United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003).  The court may not "substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury." United States v. Guadagna, 183 F.3d 122, 130 (2d Cir. 1999) (internal quotation marks and citations omitted).  Determining the witnesses' credibility falls strictly within the province of the jury.  Guadagna, 183 F.3d at 129 (noting that the court must defer to the jury even if the evidence would also support,

in the court's opinion, a different result).

A judgment of acquittal is warranted only if the court concludes that the evidence is non-existent or so meager that no rational trier of fact could find the defendant guilty beyond a reasonable doubt.  <u>Velasquez</u>, 271 F.3d at 270; <u>Guadagna</u>, 183 F.3d at 130. The court must consider the evidence "in its totality, not in isolation, and the government need not negate every possible theory of innocence."  <u>United States v. Cote</u>, 544 F.3d 88, 98 (2d Cir. 2008); <u>see</u> <u>Guadagna</u>, 183 F.3d at 130 ("each fact may gain color from the others").

### 2.    The Lesser Included Offenses

Taher asserts that his marijuana conspiracy convictions cannot stand because they are lesser included offenses of his continuing criminal enterprise conviction.   The government agrees.  (<u>See</u> Government's Response to Defendant's Motions for Acquittal and New Trial, Docket No. 484, p. 1 n.1.)  Indeed, under <u>Rutledge v. United States</u>, this Court must vacate Defendant's convictions on Counts 2 and 3 because they are lesser included offenses of Count 1.  517 U.S. 292, 307, 116 S.Ct. 1241, 1250-51, 134 L.Ed.2d 419 (1996) (holding that underlying conspiracy offenses are lesser included offenses of a continuing criminal enterprise charge because a guilty verdict on a continuing criminal enterprise charge necessarily includes a finding that the defendant also participated in the underlying conspiracy).  Taher's convictions on Counts 2 and 3 are therefore vacated.  <u>See</u> <u>id.</u> (requiring that lesser included conspiracy offenses of a continuing criminal enterprise conviction be vacated).

### 3.     The Jury Note

During a sidebar at the end of the trial day on July 3, 2013, and with the Court Security Officer out of view, Taher displayed a handwritten note to the jury on an $8^{1/2}$ x 11-inch piece of paper that stated "Bangs Are Nice" in block letters, presumably to curry favor with a female juror by complimenting her hairstyle.  (Transcript, Docket No. 513, pp. 2-4, 12.)  A member of the government's trial team observed Taher's conduct and reported it to the prosecutors.  The prosecutors immediately asked defense counsel to secure the note, but defense counsel could not locate it.  (Tr. at p. 4.)  Surveillance video captured the entire incident, and revealed that Taher removed the note from a file folder and secreted it in his pocket before defense counsel could find it.  (Tr. at 4.)  None of these facts are in dispute.

The trial resumed on July 8, 2013, after the Independence Day holiday, at which time this Court discussed with counsel how to address the incident with the jury.  Over Taher's objection, this Court determined that a pointed question to the jury inquiring whether they saw the piece of paper that Taher wrote on was required.  After bringing the jurors into the courtroom and generally instructing them about the presumption of innocence, the need for unanimity, the requirement that they consider only the evidence presented, and their obligation to consider each defendant separately (Tr. at 22-23), this Court addressed the note as follows:

> Now, I want to start with the preliminary matter.  And I'm going to direct your attention back to Wednesday, and at the conclusion of the court proceedings just before you were let go for the weekend, I was meeting with the attorneys, and I think you were still waiting to be discharged.  And at or about that time before you were let go, but at the end of the conclusion of the court proceedings while we were all still here, Mr. Taher

was observed writing on a piece of paper.  It would happen to be an eight-and-a-half-by-eleven sheet I think, which he held up in a manner that the writing on it may have been visible to one or more of you at that time from where you are and where he was at counsel table.

And my question to you is, did any of you see the sheet of paper that was held up and may have been visible to you if you were looking in that direction?  That's my first question.  Did any of you see that sheet of paper?

Okay.  Is there anybody that did?  Okay.

And whatever was written on it, did any of you - - I mean, if you haven't seen the paper, you probably didn't - - then you could not have seen what was written on it.  But whatever that communication was, I take it that none of you saw that writing that was on the paper that could have been visible from the distance you're sitting, is that a fair statement? Okay.

Okay.  And I just - - I call that matter to your attention, and as long as nobody saw it, there wouldn't be a necessity to further discuss the matter.

But, a couple of things.  I make that inquiry because, you know, whatever an individual happens to write on a piece of paper in the course of a trial, that's - - that's a communication that shouldn't be disclosed.  And as long as you didn't see it, it won't be.  But my instruction to you is that you're not to speculate what was on that particular sheet of paper or that note.  And whether you saw it or shouldn't have seen it is of no consequence to your final decision in this particular case.  I mean, you are to decide this case on the basis of the evidence or the lack of evidence that is presented to you.

I needed to inquire about that particular matter because it was brought to my attention.  And I just wanted to make sure that there's nothing unfairly prejudicial that you would think or be tending to think as a result of maybe having seen something that was written on a piece of paper.  It is not for you to consider with respect to Mr. Taher.  You are not to consider it in any fashion, because it's not evidence.   And it's not presented to you by the government in any fashion with respect to establishing its case beyond a reasonable doubt as to each essential element of the crime charged.

6

In addition to that, and as you know, you are to consider the case here separately as to each defendant, as to each charge. And with respect to defendant Kaleel Albanna - - I've been discussing matters with you relative to a note that Mr. Taher apparently authored. But that is not to be considered in any fashion also as against Kaleel Albanna, the defendant in this case. You decide his case on the merits, and the merits being the proof or the lack of proof, not having anything to do with the matter that I've just inquired about with you.

So please, you know, again, don't speculate. I mean, you know, it's like if you you've heard something you put it aside, because it's not proper to consider. In this case, I had the obligation to check with you. And I did that. It's not a matter that's in any way proper for you to consider. Not to - - please, don't speculate, and we'll be able to go forward with the case in that regard.

What I talked to you about is not evidence. You are not to consider it as against Mr. Taher, because that would be unfair to him. Similarly, with respect to Kaleel Albanna, he had nothing to do with that inquiry. It's not to be considered by you with respect to Kaleel Albanna. You decide the case as to each on the merits of the proof as against each and whether it satisfies the government's burden, as you know, beyond a reasonable doubt. Okay.

Everyone okay? All right. Does anybody here feel that he or she, on the basis of my instruction to you, is in any way unable to continue in a fair and impartial way?

Okay.

(Tr. at pp. 24-27.)

During that colloquy, no juror reported seeing the note. After a short break during

which Taher's defense counsel requested that an additional instruction be given to the jury,

this Court further instructed the jury as follows:

The only thing to mention to you, the fact that I made the inquiry that I did, that's not to be considered by you. I have to do certain things in case a situation like that arises. And so I did that, but don't consider that in any way in terms of its

having any effect on what you should properly do in this case
based on the evidence or the lack of evidence, okay?  All right.
Terrific.  Thank you.

(Tr. at p. 30.)

Taher argues that this colloquy was too specific and that he was unfairly prejudiced by being solely identified as the individual who may have written something seen by the jury.  Taher alleges that this Court "[made] express reference to his attempted use of a note to communicate with the jury" and "volunteer[ed] to the trial jury that Mr. Taher had sought to pass a note to one or more members of the trial jury."  (Defendant's Memorandum of Law, Docket No. 470, p. 4; Defendant's Reply Memorandum of Law, Docket No. 488, p. 2.)  Citing <u>Remmer v. United States</u>, Taher further argues that "presumptive prejudice" arises from this contact with the jury. 347 U.S. 227, 229, 74 S. Ct. 450, 98 L.Ed. 654 (1954).  None of these arguments is persuasive, and this Court finds that its measured inquiry to the jury was both necessary and proper.

First, contrary to Taher's assertions, the transcript reveals that this Court did not reveal to the jury what Taher wrote on the paper, did not "make express reference" to Taher intentionally trying to communicate with them, and did not "volunteer" that Taher tried to pass any of them a note.  Rather, this Court carefully presented an innocuous inquiry centered around whether any juror saw what Taher wrote on a piece of paper and then held up in a manner that may have made the writing visible to members of the jury. (Tr. at 24.)  There was no suggestion that Taher intentionally tried to communicate with the jury (although he certainly did), nor was there a suggestion that what the jury may have seen was prejudicial or an attempt to influence them.  Although on two occasions this Court referenced the piece of paper as a "communication" (Tr. at 25), the instruction as a whole

8

is more accurately understood as presenting an indefinite, neutral scenario in which Taher inadvertently held a piece of paper that *may have become* visible to one or more of the jurors.

Second, Taher's position that this Court erred by specifically identifying him as the actor ignores the very real danger that jurors could have attributed unspecified conduct to the government or codefendant Albanna, which, under these self-created circumstances, would have been exceedingly unfair. Consequently, identifying Taher as the actor was required to cure any possible prejudice to the government or Albanna.[2]

Third, this Court's colloquy with the jury — which occurred only because of Taher's improper conduct — was not "presumptively prejudicial." In Remmer, the United States Supreme Court pronounced that "[i]n a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial." 347 U.S. at 229. Remmer involved a third-party's communication to a juror that was not disclosed to the defendant; it did not involve a situation, as here, where a defendant intentionally communicates with a jury. Given this Court's innocuous presentation of the facts to the jury, and given that no juror reported observing Taher's conduct, this Court finds that the presumption of prejudice referenced in Remmer does not attach here, and there is no reasonable possibility that this incident, or this Court's handling of the incident, affected the

---

[2]Taher relies on United States v. Hernandez as a model of the neutral presentation he advocates. 952 F.2d 1110 (9th Cir. 1991). Hernandez involved a juror's report to the court that he observed one of the defendants make a gesture at a witness — a threatening, "slit-across-the-throat" gesture. Hernandez did not involve an intentional communication from a defendant to a juror. It is also not known from the reported decision in Hernandez whether other jurors also saw the gesture or subsequently learned of it. Hernandez is therefore not instructive here, where the defendant acted intentionally and many unknowns had to be resolved to properly ensure the rights of both defendants.

jury's verdict.[3]

Finally, this Court repeatedly instructed the jurors to disregard anything they may have seen and, in fact, to disregard the entire inquiry, and a jury is presumed to follow curative instructions.  See Greer v. Miller, 483 U.S. 756, 766 n. 8, 107 S. Ct. 3102, 97 L.Ed.2d 618 (1987) ("We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant." (internal citations omitted)); United States v. Colombo, 909 F.2d 711, 715 (2d Cir. 1990) ("we presume that a jury adheres to the curative instructions of the trial court").

The jurors in this case were exceptional and were engaged throughout the trial.  (Tr. at 13.)  They were unquestionably able to follow this Court's instruction and put this incident out of their minds, as evidenced by their return of an acquittal on Count 4 and lesser drug quantity findings on Counts 2 and 3, all findings in Taher's favor.

**4.     The Jury Instructions**

**a.     The Uncalled-Witness-Equally-Available Instruction**

Taher argues that this Court's inclusion of an uncalled witness instruction impermissibly shifted to him the burden of proving multiple conspiracies, consistent with his defense theory, rather than holding the government to its burden of proving the existence of a single conspiracy.  In particular, Taher argues that by including all uncalled witnesses in this charge, Taher was left to decide whether to call a witness (a codefendant

---

[3]To the extent Taher suffered any prejudice at all, it was entirely self-imposed and therefore not unfairly prejudicial.

who had pled guilty) that the government could have called to prove the existence of multiple conspiracies.  This argument is without merit.

This Court instructed the jury as follows:

> THERE ARE SEVERAL PERSONS WHOSE NAMES YOU HAVE HEARD DURING THE COURSE OF THE TRIAL BUT WHO DID NOT APPEAR HERE TO TESTIFY, AND ONE OR MORE OF THE ATTORNEYS HAS REFERRED TO THEIR ABSENCE FROM THE TRIAL. I INSTRUCT YOU THAT EACH PARTY HAD AN EQUAL OPPORTUNITY OR LACK OF OPPORTUNITY TO CALL ANY OF THESE WITNESSES. THEREFORE, YOU SHOULD NOT DRAW ANY INFERENCES OR REACH ANY CONCLUSIONS AS TO WHAT THEY WOULD HAVE TESTIFIED TO HAD THEY BEEN CALLED.
>
> YOU SHOULD, HOWEVER, REMEMBER MY INSTRUCTION THAT THE LAW DOES NOT IMPOSE ON A DEFENDANT IN A CRIMINAL CASE THE BURDEN OR DUTY OF CALLING ANY WITNESSES OR PRODUCING ANY EVIDENCE.

This is a permissible missing-witness instruction.  See United States v. Caccia, 122 F.3d 136, 139 (2d Cir. 1997) (finding that courts have the discretion to "instruct the jury that no unfavorable inference may be drawn against either side"); United States v. Bahna, 68 F.3d 19, 22 (2d Cir. 1995). Moreover, this charge specifically instructs the jury that a defendant has no burden to call witnesses or produce evidence.  Finally, in no way did this charge shift to Taher the burden of proving multiple conspiracies.

### b.    The *Falsus-in-Uno,-Falsus-in-Omnibus* Instruction

Taher next argues that this Court erred by failing to recognize its discretion to include the *Falsus in Uno, Falsus in Omnibus* jury instruction that he requested.  This argument is wholly without merit.  Although the *Falsus in Uno, Falsus in Omnibus* instruction is generally disfavored, this Court is well aware of its discretion to use it with

juries, if appropriate.  See United States v. Weinstein, 452 F.2d 704, 713 (2d Cir. 1971)

("The maxim "*Falsus in uno, falsus in omnibus*" has been well said to be itself "absolutely

false as a maxim of life." (citation omitted).); 1 L. Sand et al., Modern Federal Jury

Instructions – Criminal, ¶ 7.01, at Instruction 7–17 (2013) (recommending that the

instruction not be given).  Here, this Court refused Taher's request to use the instruction,

not because it lacked discretion to do so, but rather, because it found that the charge

would not be applicable or helpful.  (Tr. at 31.)

### 5.      The Jury Verdict Form

Taher next argues that the Jury Verdict Form erroneously failed to instruct the jury

that it must unanimously agree on which three acts constituted the three acts required to

establish a continuing serious of violations of the federal narcotics laws.  But Taher

concedes, as he must, that use of such a special interrogatory falls within the court's broad

discretion.  See United States v. Ogando, 968 F.2d 146, 149 (2d Cir. 1992).  It is not

required.

In addition to the general unanimity charge, this Court specifically instructed the jury

on Count 1 as follows:

> THE SECOND ELEMENT THE GOVERNMENT MUST
> PROVE BEYOND A REASONABLE DOUBT IS THAT THIS
> OFFENSE WAS PART OF A CONTINUING SERIES OF
> VIOLATIONS OF THE FEDERAL NARCOTICS LAWS.
>
> A CONTINUING SERIES OF VIOLATIONS IS THREE OR
> MORE VIOLATIONS OF THE FEDERAL NARCOTICS LAWS
> COMMITTED OVER A DEFINITE PERIOD OF TIME AND
> RELATED TO EACH OTHER IN SOME WAY, AS
> DISTINGUISHED FROM ISOLATED OR DISCONNECTED
> ACTS.

> THESE VIOLATIONS DO NOT HAVE TO BE CONVICTIONS OR SEPARATE COUNTS IN THE INDICTMENT.  THEY MAY BE OVERT ACTS CHARGED IN THE CONSPIRACY COUNT OF THE INDICTMENT OR EVEN ACTS NOT MENTIONED IN THE INDICTMENT AT ALL, AS LONG AS THE DEFENDANT HAD THE INTENT TO VIOLATE THE NARCOTICS LAWS WHEN HE COMMITTED THESE ACTS.
>
> YOU MUST UNANIMOUSLY AGREE ON WHICH THREE ACTS CONSTITUTE THE CONTINUING SERIES OF VIOLATIONS.

In addition, although not containing the specific interrogatory that Taher argues was necessary, the Jury Verdict Form reiterates the need for unanimity.  For example, the preamble to the Jury Verdict Form instructed as follows:

> Having been instructed on the law applicable to this case, you are now required to *make a unanimous finding* of guilty or not guilty as to each defendant on each of the counts charged. Follow the directions on this form carefully.  As instructed, you will begin by considering Counts 2 and 3, and then proceed to Counts 1, 4, 5, and 6.  Your answers to the questions on this form *must be unanimous*.  Any finding of guilt must be based on findings beyond a reasonable doubt.

(See Docket No. 431 (emphasis added).)  In addition, the following caution was included under the foreperson's signature line for each count: PLEASE REMEMBER THAT YOUR VERDICT MUST BE UNANIMOUS.  (Id. (emphasis in original).)

Based on the jury instructions and the directives on the Jury Verdict Form, this Court finds that the jury was properly instructed on the law applicable to Count 1, including the requirement that it unanimously agree on which three acts of the defendant constituted the three acts required to establish a continuing serious of violations of the federal narcotics laws.  No special interrogatory on the Jury Verdict Form was necessary or required.

### 6.    The Court's Evidentiary Rulings

Taher next argues that this Court made two erroneous evidentiary rulings.

First, Taher argues that this Court erroneously admitted statements obtained in violation of his constitutional rights.  Taher voluntarily made these statements to New York State Police Trooper Leonard Genovese and New York State Police Investigator John McCusker on May 30, 2007, after Genovese stopped and searched Taher's vehicle and seized a cereal box full of cash.[4]   During pretrial proceedings before the assigned Magistrate Judge, Taher sought to suppress his statements as unconstitutionally obtained in violation of his Miranda rights.  After full briefing and a two-day hearing, the Magistrate Judge recommended that Taher's motion to suppress be denied.  (Docket No. 237.)  This Court accepted the Magistrate Judge's recommendation over Taher's objections.  (Docket No. 268.)  For the reasons stated in the Report and Recommendation, this Court again finds that the statements were not unconstitutionally obtained and were therefore properly admissible at trial.

---

[4]The statements at issue are as follows:

"You are not taking my fucking money."

"If you write me that ticket, it will be the worst mistake you ever made. You will be back living in the hood with us when I'm done with you."

"Yo, if you don't write that ticket, give me back my money and apologize, I'll make this go away like nothing happened."

"My lawyer's going to sue your ass; he's going to have a field day with this."

"You're making a big mistake.  This is never going to hold up in court."

"You better hope that every dollar is still there."

(See Defendant's Memorandum of Law, Docket No. 470, pp. 12-13.)

Second, Taher argues that notwithstanding the rejection of his constitutional challenge, this Court should have precluded the government from introducing his statements into evidence because they are unfairly prejudicial under Rule 403 of the Federal Rules of Evidence.  But as this Court previously held, Taher's relevant statements are not shocking or inflammatory and nothing about them is unfairly prejudicial.  Rule 403 therefore does not require their preclusion.

\* \* \*

Taher has failed to establish that insufficient evidence underlies his convictions or any other reason exists to enter a judgment of acquittal in his favor.  His motion seeking such relief is therefore denied.

**B.    Taher's Rule 33 Motion**

Rule 33 of the Federal Rules of Criminal Procedure provides that a court may grant a motion for a new trial "if the interest of justice so requires."  A district court "has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority 'sparingly' and only in 'the most extraordinary circumstances.'" United States v. Ferguson, 246 F.3d 129, 134 (2d Cir.2001) (quoting United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir.1992)).  "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be manifest injustice . . . . There must be a real concern that an innocent person may have been convicted." Ferguson, 246 F.3d at 134.   A reviewing court must be satisfied that "competent, satisfactory and sufficient evidence" in the record supports the jury verdict. Sanchez, 969 F.2d at 1414 (internal quotation marks omitted).

Here, the jury's verdict is fully supported by competent evidence and none of the

15

errors that Taher perceives, which as discussed above hold no merit, constitute manifest injustice or give rise to a real concern that an innocent person may have been convicted. See Ferguson, 246 F.3d at 134.   Taher is therefore not entitled to a new trial and his request for one is denied.

## IV. CONCLUSION

For the reasons stated above, Taher's Motion for a Judgment of Acquittal, or in the alternative, for a New Trial, is granted in part and denied in part.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for a Judgment of Acquittal, or in the alternative, for a New Trial (Docket No. 469) is GRANTED in part and DENIED in part, consistent with the foregoing decision.

FURTHER, that Defendant's convictions on Counts 2 and 3 are VACATED.

SO ORDERED.


Dated:   March 30, 2014
          Buffalo, New York


                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                            Chief Judge
                                   United States District Court