UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MOHAMED TAHER,

                    Petitioner,

        v.                                    **DECISION AND ORDER**
                                              18-CV-162S
UNITED STATES OF AMERICA,                     09-CR-135S (2)

                    Respondent.


# I. INTRODUCTION

Presently before this Court is petitioner Mohamed Taher's Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255. (Docket No. 592.[1]) For the reasons discussed below, Taher's motion is denied.

# II. BACKGROUND

On April 27, 2011, a federal grand jury returned a six-count Third Superseding Indictment against Taher and others. (Docket No. 197.) Count 1 charged Taher with engaging in a continuing criminal enterprise ("CCE") between January 2006 and May 2007, in violation of 21 U.S.C. § 848 (a). Counts 2 and 3 charged Taher with conspiring to distribute (Count 2) and conspiring to import (Count 3) 100 kilograms or more of marijuana during the same time period, in violation of 21 U.S.C. §§ 846 and 963. Count 4 charged Taher with bulk cash smuggling on or about January 6, 2006, in violation of 31 U.S.C. §§ 5332 (a)(1) and (b) and 18 U.S.C. § 2. Count 5 charged Taher with making a false statement on April 14, 2007, in violation of 18 U.S.C. § 1001 (a)(2). Count 6 charged

_____

[1] All docket citations are to the criminal case: 09-CR-135S (2).

1

Taher with aggravated identity theft on April 14, 2007, in violation of 18 U.S.C. § 1028A (a)(1).

Trial began on June 13, 2013, and concluded on July 11, 2013.  Upon the close of the government's proof, this Court denied Taher's Rule 29 motion.  (Docket No. 421.) The jury subsequently found Taher guilty on Counts 1, 2, 3, 5, and 6.  (Docket No. 431.) It acquitted him on Count 4.  Id.  As to Counts 2 and 3, the jury found that Taher conspired to distribute, and conspired to import, at least 50 kilograms but less than 100 kilograms of marijuana, as opposed to the 100 kilograms or more of marijuana charged in the indictment.  Id.

The government's proof at trial essentially established that after being released from prison in 2005, Taher began leading a marijuana-distribution network that operated at least from early 2006 to May 2007 in the Western District of New York, Canada, Detroit, and Chicago.  Taher was the "central figure" and recruited, organized, supervised, and managed numerous individuals in the importation of marijuana from Canada for distribution in the United States.  See United States v. Taher, 663 F. App'x 28, 30 (2d Cir. Sept. 28, 2016) (summary order) (identifying Taher as "a central figure" and finding that "sufficient evidence existed for the jury to find that Taher supervised at least six other individuals").  Taher sent individuals under his supervision to Canada to load vehicles with marijuana for female drivers to bring over the border to waiting members of the distribution network, who would then distribute the marijuana in the Buffalo, Detroit, and Chicago areas under Taher's direction.  Taher generated income and resources from this drug-trafficking organization, as demonstrated in part by the government's proof of over $75,000 in seizures alone.

On March 30, 2014, this Court granted a portion of Taher's post-trial Rule 29 motion, vacating his convictions on Counts 2 and 3 on the basis that they are lesser included offenses of the CCE charge in Count 1. See United States v. Taher, No. 09-CR-135S (2), 2014 WL 1315254, at *2 (W.D.N.Y. Mar. 30, 2014); see Rutledge v. United States, 517 U.S. 292, 307, 116 S. Ct. 1241, 1250-51, 134 L.Ed.2d 419 (1996) (requiring that lesser included conspiracy offenses of a continuing criminal enterprise conviction be vacated). In all other respects, Taher's post-trial motion was denied. See Taher, 2014 WL 1315254.

On April 2, 2014, this Court sentenced Taher to, *inter alia*, an aggregate term of 300 months' imprisonment and 5 years' supervised release for his convictions on Counts 1, 5, and 6. Taher thereafter appealed to the United States Court of Appeals for the Second Circuit, which affirmed on September 28, 2016. See Taher, 663 F. App'x 28.

In affirming this Court's judgment, the Second Circuit rejected Taher's arguments that his CCE conviction should be reversed because (1) the government failed to prove the single conspiracy charged in the indictment and instead proved multiple conspiracies, (2) the jury may not have unanimously agreed on each of the violations constituting a "continuing series of violations" as statutorily required, or (3) the jury may impermissibly have counted individuals who, for lack of evidence, could not be included among the necessary five individuals that he organized, supervised, or managed. See id. at *30.

The Second Circuit also rejected Taher's arguments that this Court erred or abused its discretion by (1) finding that Taher was not in custody when he made statements to law enforcement officers and admitting those statements into evidence, (2) denying a mistrial after a witness inadvertently revealed that Taher was in jail at a certain

time; and (3) delivering erroneous instructions to the jury after Taher attempted to communicate with jurors by holding up a note.[2]  See id. at *30-31.

The United States Supreme Court denied Taher's petition for writ of certiorari on February 21, 2017.  See Taher v. United States, 137 S. Ct. 1110, 197 L. Ed. 2d 213 (2017).  Less than one year later, on January 31, 2018, Taher timely filed the instant § 2255 motion,[3] which the government opposes.[4]  (Docket Nos. 592, 596, 598.)

### III. DISCUSSION

**A.      § 2255 Proceedings**

Twenty-eight U.S.C. § 2255 allows federal prisoners to challenge the legality of their sentences.  It provides, in pertinent part, that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (a).

Importantly, a § 2255 motion is not a substitute for an appeal.  See Bousley v. United States, 523 U.S. 614, 621, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'") (quoting Reed v. Farley, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300, 129 L. Ed. 2d 277 (1994)).  Relief under § 2255 is therefore narrowly limited, with collateral attack on a final

---

[2] The Second Circuit also rejected as without merit "all of Taher's remaining arguments" raised in his appeal but not set out in the Court's summary order.

[3] A 1-year statute of limitations applies to § 2255 petitions.  See 28 U.S.C. § 2255 (f).

[4] Taher's motion includes requests for discovery and a hearing.  (Docket No. 592.)

criminal judgment available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (per curiam) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks omitted)). This narrow limitation preserves respect for finality, allows for the efficient allocation of judicial resources, and recognizes an aversion to retrying issues long after they occur. See Bokun, 73 F.3d at 12 (citations omitted).

To shape the narrow relief available under § 2255, two procedural rules apply to make it more difficult for a defendant to upset a final criminal judgment on collateral review. See Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010). First, the "mandate rule" bars re-litigation of issues already decided on direct appeal. See id.; see also Burrell v. United States, 467 F.3d 160, 165 (2d Cir. 2006); United States v. Perez, 129 F.3d 255, 260 (2d Cir. 1997) ("[I]t is well-established that issues decided on direct appeal may not be re-litigated in the context of a petition under § 2255.") This includes "not only . . . matters expressly decided by the appellate court, but also . . . re-litigation of issues impliedly resolved by the appellate court's mandate." Yick Man Mui, 614 F.3d at 53 (citing United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001)). This rule also bars ineffective-assistance-of-counsel claims that were raised and resolved on direct appeal, as well as those involving factual predicates that while not explicitly raised on direct appeal, were impliedly rejected by the appellate court mandate. See id. at 53-54 (citations omitted). An exception to this rule exists for cases involving intervening changes in the law, in which case the petitioner "must show that there is new law which, when applied to

their claims, would result in a different disposition." <u>Chin v. United States</u>, 622 F.2d 1090, 1092 (2d Cir. 1980) ("Reconsideration [of claims previously raised on direct appeal] is permitted only where there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal.") (citing <u>United States v. Loschiavo</u>, 531 F.2d 659, 664 (2d Cir. 1976)).

Second, the "procedural default" rule bars the collateral review of claims that could have been raised on direct appeal, unless the petitioner shows cause for failing to raise the claims on direct review and actual "prejudice" or actual innocence. <u>See</u> <u>Bousley</u>, 523 U.S. at 622-23 (citations omitted); <u>see also</u> <u>Marone v. United States</u>, 10 F.3d 65, 67 (2d Cir. 1993) ("In order to raise a claim that could have been raised on direct appeal, a § 2255 petitioner must show cause for failing to raise the claim at the appropriate time and prejudice from the alleged error.") This rule does not apply to ineffective-assistance-of-counsel claims, which may be brought in a § 2255 motion regardless of whether they could have been raised, or were raised, on direct appeal. <u>See</u> <u>Massaro v. United States</u>, 538 U.S. 500, 508-09, 123 S. Ct. 1690, 1696, 155 L. Ed. 2d 714 (2003).

Discovery in § 2255 proceedings is governed by Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts. Leave of court is required to engage in discovery, which may be granted for good cause. <u>See</u> Rule 6 (a). Such discovery is conducted under the Federal Rules of Criminal or Civil Procedure, or "in accordance with the practices and principles of law."[5] <u>Id.</u> The party requesting discovery must provide reasons for the request, which must "include any proposed interrogatories

---

[5] "If necessary for effective discovery, the judge must appoint an attorney for a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A." Rule 6 (a).

and requests for admission, and must specify any requested documents." Rule 6 (b).

A petitioner may also be entitled to an evidentiary hearing. Section 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." To determine whether a hearing is necessary, the court "must review the answer, any transcripts and records of prior proceedings, and any [additional materials submitted by the parties]." Rule 8 (a). If a hearing is necessary, the court must appoint an attorney to any moving party who qualifies for the appointment of counsel under 18 U.S.C. § 3006A. See Rule 8 (c). A hearing is generally warranted only where the petitioner establishes a plausible claim. See Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009).

The Second Circuit has further described the standard for holding a § 2255 evidentiary hearing as follows:

> In ruling on a motion under § 2255, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see, e.g., Pham v. United States, 317 F.3d 178, 185 (2d Cir. 2003) (§ 2255 does not permit summary dismissals of motions that present facially valid claims). However, the filing of a motion pursuant to § 2255 does not automatically entitle the movant to a hearing; that section does not imply that there must be a hearing where the allegations are "vague, conclusory, or palpably incredible." Machibroda v. United States, 368 U.S. 487, 495, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962); see, e.g., Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001). To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief. See, e.g., Machibroda, 368 U.S at 494, 82 S. Ct. 510; United States v. Aiello, 814 F.2d 109, 113-14 (2d Cir. 1987).

Gonzalez v. United States, 722 F.3d 118, 130-31 (2d Cir. 2013).

The petitioner bears the burden of proving entitlement to relief under § 2255 by a

preponderance of the evidence. See <u>Galviz Zapata v. United States</u>, 431 F.3d 395, 399 (2d Cir. 2005) (citing <u>Williams v. United States</u>, 481 F.2d 339, 346 (2d Cir. 1973)); <u>see also</u> <u>Triana v. United States</u>, 205 F.3d 36, 30 (2d Cir. 2000).

## B.    Taher's Claims

Taher asserts two grounds in his petition: (1) ineffective assistance of trial counsel (Docket No. 592, p. 4); and (2) improper jury instructions concerning the CCE count (<u>id.</u> p. 5).  These claims are addressed below.

### 1.  Taher's ineffective-assistance-of-counsel claims fail.

Taher maintains that his trial counsel was ineffective.  He claims that trial counsel (1) failed to challenge the legality of the vehicle stop in his motion to suppress evidence; (2) failed to object to the CCE jury instructions; (3) failed to demand the identities of the individuals whom Taher allegedly managed or supervised; (4) failed to object to the government's series-of-violations proof; (5) failed to object to the instruction that drug quantity is not an essential element of the conspiracy charges; (6) failed to challenge the indictment for not specifically identifying the predicate acts underlying the CCE count; and (7) failed to object to a sleeping juror.

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence."  U.S. CONST. amend VI.  It is well established that "the right to counsel is the right to the effective assistance of counsel."  <u>Eze v. Senkowski</u>, 321 F.3d 110, 124 (2d Cir. 2003) (quoting <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).

Taher's ineffective-assistance-of-counsel claims may be brought in this collateral

proceeding under § 2255 regardless of whether they could have been raised, or were raised, on direct appeal.[6]  See Massaro, 538 U.S. at 508-09.  To succeed on his ineffective-assistance-of-counsel claims and to secure reversal of his conviction on the ground of inadequate legal representation, Taher must establish both prongs of the two-part test from Strickland v. Washington: (1) that his counsel's performance "fell below an objective standard of reasonableness;" and (2) that "the deficient performance prejudiced" him.  466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

To satisfy the first prong of the Strickland test, Taher must establish that his counsel's conduct fell below "an objective standard of reasonableness" under "prevailing professional norms" such that it was "outside the wide range of professionally competent assistance."  Id. at 688, 690.  Under this prong, the court "must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and be watchful 'to eliminate the distorting effects of hindsight.'"  Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) (quoting Strickland, 466 U.S. at 689).  This is because "[t]here are countless ways to provide effective assistance in any given case" and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way."  Strickland, 466 U.S. at 689 (internal citation omitted).  The question is ultimately "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."  Harrington v. Richter, 562 U.S. 86, 105, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

---

[6] As noted above, however, the mandate rule still applies.  That is, ineffective-assistance-of-counsel claims that were raised and resolved on direct appeal, and any claims involving factual predicates that were impliedly rejected on direct appeal, are barred.  See Yick Man Mui, 614 F.3d at 53-54 (citations omitted).

To satisfy the second prong of the Strickland test, Taher must establish that his attorney's "deficient performance prejudiced the defense" such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See Strickland, 466 U.S. at 687, 694. The Second Circuit normally "requires some objective evidence other than defendant's assertions to establish prejudice," Pham v. United States, 317 F.3d 182, 182 (2d Cir. 2003), because "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding," Strickland, 466 U.S. at 693. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial." Id. at 687.

Because both parts of the Strickland test must be satisfied for a petitioner to establish ineffective assistance of counsel, failure to satisfy one part of the test frees a district court from assessing whether the petitioner satisfied the other part of the test. Strickland, 466 U.S. at 697 (noting that a court need not "address both components of the [two-part Strickland] inquiry if the defendant makes an insufficient showing on one"); see also Stouse v. Leonardo, 928 F.2d 548, 556 (2d Cir. 1991).

Each of Taher's ineffective-assistance-of-counsel claims fails to meet the Strickland test.

### a. Trial counsel's failure to challenge the legality of the vehicle stop does not constitute ineffective assistance of counsel.

Taher claims that trial counsel was ineffective for conceding the legality of the vehicle stop in connection with his motion to suppress evidence. Taher argues that the stop was subject to challenge because officers prolonged the traffic stop beyond what was necessary to write a traffic citation and offered a post-hoc rationale for the stop. Had counsel not conceded the legality of the stop, Taher argues, the issue would have been

preserved for a successful appeal, and Taher's statements and the cash found in the vehicle would have been suppressed as fruit of the illegal seizure. The government contends that counsel's strategic decision to focus his suppression arguments in other areas was sound given the evidence supporting the legality of the stop.

New York State Trooper Leonard J. Genovese, Jr., stopped Taher's vehicle after being instructed by his superiors to watch for a black Cadillac Escalade with dark tinted windows and to stop it if he had probable cause to do so. (Suppression Hearing Transcript, Docket No. 127, pp. 6, 8-11, 14, 76, 79.) Upon initially encountering Taher's vehicle entering the New York State Thruway, Genovese observed that it had no front license plate and dark tinted windows, two attributes violative of New York State traffic laws. (Id. pp. 11-13; 76-77.) After stopping the vehicle, Genovese detected the strong odor of marijuana emanating from its interior. (Id. p. 15.) Taher denied possessing marijuana and told Genovese that he could search the vehicle, which he did, ultimately discovery marijuana. (Id. pp. 16-17, 78.) Genovese testified that this was not an ordinary traffic stop and that he likely would not have stopped Taher's vehicle if his superiors did not instruct him to. (Id. p. 79.)

Nothing about trial counsel's handling of the traffic stop was ineffective. Contrary to Taher's argument that Genovese invented a post-hoc traffic infraction to cover a pretextual stop, Genovese testified that he personally observed that Taher's vehicle was missing a front license plate and may have illegally tinted windows, which gave him probable cause to stop the vehicle. See, e.g., N.Y. Veh. & Traf. Law § 402 (1)(a) (requiring that front and rear license plates be conspicuously displayed); see also Whren v. United States, 517 U.S. 806, 810, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996) ("As a

general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.").  Once stopped, further probable cause developed that a controlled substances offense may have been committed when Genovese detected the strong smell of marijuana emanating from the interior of the vehicle.  The search that ensued—a search that Taher invited—was commensurate with the roadside investigation into possible controlled substances violations, a fact that Taher ignores in arguing that the length of the traffic stop was disproportionate to the traffic citation alone.

A court reviewing counsel's performance is "not permitted to use hindsight to second guess [counsel's] strategy choices." Baran v. United States, 160 F. Supp. 3d 591, 596 (S.D.N.Y. 2016) (quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)).  Given the legality of the stop and subsequent search, this Court easily finds that counsel's tactical decision to focus his arguments on other aspects of the encounter that may have warranted suppression was not ineffective.  See United States v. Guerrero, 882 F. Supp. 2d 463, 490 (S.D.N.Y. 2011) ("Merely disagreeing with counsel's strategy and finding it inadequate is not enough for a defendant to prevail on an ineffective assistance of counsel claim.") (citing United States v. Sanchez, 790 F.2d 245, 253 (2d Cir. 1986) ("A defendant, of course, may not claim ineffective assistance of counsel merely because in hindsight he thinks counsel's trial strategy was inadequate.")).  Taher therefore fails to overcome the presumption of effectiveness attached to an attorney's performance and fails to show that counsel's alleged errors would have changed the outcome of the trial.  See Strickland, 466 U.S. at 689.

**b. Trial counsel's failure to object to the CCE jury instructions does not constitute ineffective assistance of counsel.**

Taher maintains that trial counsel was ineffective for not objecting to this Court's instruction to the jury that the charges in Counts 2 and 3 could serve as part of a "series of violations" for the CCE charge. In Taher's view, these instructions were incorrect because the conduct charged in Counts 2 and 3 covered the same time period and therefore could not be a "series of violations" as contemplated in 21 U.S.C. § 848 (c)(2). The government maintains that the jury instructions were correct.

To sustain a CCE conviction, "[t]he government need not plead or obtain convictions on any of the eligible predicate offenses, 'but may instead simply prove at trial the continuing series of offenses.'" United States v. Aiello, 864 F.2d 257, 264 (2d Cir. 1988) (quoting United States v. Young, 745 F.2d 733, 747 (2d Cir. 1984)). That is what the government did here. The first three counts of the third superseding indictment allege criminal conduct "between at least in or about January 2006 and in or about May 2007, the exact dates being unknown." (Docket No. 197.) At trial, the government's evidence proved a number of illegal controlled-substances offenses occurring within the charged conspiracies during those 16 months. Taher does not address these offenses, but rather, wrongly assumes that offenses occurring during the same timeframe cannot support a CCE conviction, which is incorrect and unsupported by any authority. Accordingly, this Court's jury instructions were correct, and Taher's counsel was therefore not ineffective for failing to object to them.

### c. Trial counsel's failure to demand the identities of the individuals whom Taher managed or supervised does not constitute ineffective assistance of counsel.

Taher asserts that trial counsel was ineffective by failing to demand the identities of the individuals whom he allegedly managed or supervised, either by moving to dismiss

the indictment or through interrogatories to the jury on a special verdict form. Taher also argues that the government failed to prove that he managed or supervised five or more individuals because two of the individuals were non-countable "rotating runners." The government contends that Taher's claim lacks merit.

To begin, counsel was not ineffective for failing to challenge the indictment because indictments do not require the level of detail that Taher suggests. Under Rule 7 of the Federal Rules of Criminal Procedure, an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7 (c)(1). An indictment meets this standard if it "'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." United States v. Stringer, 730 F.3d 120, 124 (2d Cir. 2013) (quoting Hamling v. United States, 418 U.S. 87, 117, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974)). An indictment generally does not "have to specify evidence or details of how the offense was committed," United States v. Wey, 15-cr-611 (AJN), 2017 WL 237651, at *5 (S.D.N.Y. Jan. 18, 2017), but "need do little more than to track the language of the statute charged and state the approximate time and place of the alleged crime," United States v. Thompson, 141 F. Supp. 3d 188, 194 (E.D.N.Y. 2015).

Here, Count 1 of the indictment tracks the CCE statute and states the approximate time and place of the alleged crime. (Docket No. 197.) The government was not required to specifically identify the five individuals that Taher allegedly managed or supervised in the indictment, and Taher has presented no authority to the contrary. Consequently, the indictment was not susceptible to a motion to dismiss on the grounds Taher alleges, and

therefore, trial counsel was not ineffective for failing to pursue such a motion.

There is also no merit to Taher's contentions that counsel was ineffective for failing to request a special verdict form with interrogatories or that the government failed to prove that Taher managed or supervised five or more individuals because two of the individuals were non-countable "rotating runners." Taher points to no authority requiring that special interrogatories be submitted to the jury, and this Court found none.[7] Cf. United States v. Roman, 870 F.2d 65, 73 (2d Cir. 1989) (*suggesting* that the use of jury interrogatories in a CCE case might be "well advised"). In addition, the Second Circuit found that "sufficient evidence existed for the jury to find that Taher supervised at least six other individuals," thereby foreclosing Taher's "rotating runners" argument. See Taher, 663 F. App'x. at 30. Accordingly, counsel was not ineffective for failing to pursue these paths.

### d. Trial counsel's failure to object to the government's series-of-violations proof does not constitute ineffective assistance of counsel.

Taher asserts that counsel was ineffective for not objecting to the government's use of the two conspiracies charged in Counts 2 and 3 as part of the "series of violations" required to prove the CCE charge in Count 1 because the conspiracies occurred at the same time. This is a re-packaging of the arguments Taher made in Section III (B)(1)(b) above, and are rejected for the same reasons.

### e. Trial counsel's failure to object to the drug-quantity instruction does not constitute ineffective assistance of counsel.

Taher claims that trial counsel was ineffective because he failed to object to this

---

[7] In this argument, and throughout both his initial and reply memoranda, Taher repeatedly cites Alleyne v. United States for the proposition that "facts which establish or increase a mandatory minimum must be found by a properly instructed jury beyond a reasonable doubt." 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013). These citations are curious since there is no claim that this Court improperly made sentencing findings that should rather have been submitted to the jury, or that the jury's findings were made by any standard other than beyond a reasonable doubt.

Court's instruction to the jury that drug quantity was not an essential element of the conspiracies charged in Counts 2 and 3. Taher insists that to convict him on the conspiracy charges, the jury had to find that the involved drug quantity was 100 kilograms or more of marijuana, as charged in the indictment. He therefore argues that this Court's instruction to the contrary was an impermissible constructive amendment of the indictment. The government maintains that Taher misunderstands the law, and indeed he does.

Constructive amendment of an indictment occurs "[w]hen the trial evidence or the jury charge operates to broaden[ ] the possible bases for conviction from that which appeared in the indictment." United States v. Rigas, 490 F.3d 208, 225 (2d Cir. 2007). No such thing occurred at trial. Drug quantity is not an essential element of either crime charged in Counts 2 and 3. Consequently, this Court instructed the jury to first consider the essential elements of the crime, and then, only if it found those elements satisfied, to make findings as to the drug quantity. This is the proper procedure. See 3 L. Sand et al., Modern Federal Jury Instructions – Criminal, ¶ 56.01, at Instruction 56–12. Consequently, there is no merit to Taher's argument that this Court's instruction constituted a constructive amendment of the indictment. See United States v. Taylor, 816 F.3d 12, 17-19 (2d Cir. 2016) (rejecting the defendant's argument that his conviction based on a drug quantity less than that charged in the indictment constituted an unlawful constructive amendment of the indictment). Counsel was therefore not ineffective for failing to challenge the instruction.

### f. Trial counsel's failure to move to quash the indictment does not constitute ineffective assistance of counsel.

Taher maintains that trial counsel was ineffective by not moving to quash the

indictment on the basis that it failed to specifically identify the particular series of predicate acts underlying the CCE count and the individuals whom Taher allegedly managed or supervised. But as fully set forth in Section III (B)(1)(c) above, such specificity is not required in an indictment. Counsel was therefore not ineffective for failing to move to quash the indictment on these grounds.

### g. Trial counsel's failure to object to a sleeping juror does not constitute ineffective assistance of counsel.

Citing a case from the Supreme Court of New Jersey,[8] Taher argues that trial counsel's failure to alert this Court to a sleeping juror constitutes ineffective assistance of counsel. As the government correctly notes, however, there is no record of any sleeping juror, and the self-serving affidavit that Taher submitted claiming to have witnessed two jurors sleeping "during the important parts of the trial" provides an insufficient basis for his claim. (Docket No. 598-1.) And even if there was evidence of a sleeping juror, trial counsel may have had strategic reasons for not alerting the court. See, e.g., Ciaprazi v. Senkowski, 151 F. App'x. 62, 63 (2d Cir. 2005) (summary order) (finding that "trial counsel's decision not to object [to a sleeping juror] may well have been based on his desire to retain the inattentive juror rather than to seek to replace him with an alternate"). Either way, there is no basis for a finding of ineffectiveness.

***

Taher's ineffective-assistance-of-counsel claims challenge the very type of decisions that a court is ill-suited to second-guess. See Taylor v. Illinois, 484 U.S. 400, 417-18, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988) (attorney has authority to manage most

---

[8] Taher cites State v. Mohammed, a case that considers the proper procedures that state judges in New Jersey should follow when faced with an inattentive juror. 226 N.J. 71 (2016). The case has no bearing on these proceedings.

aspects of the defense without obtaining his client's approval); <u>see also</u> <u>Sheehan v.</u> <u>United States</u>, 16-CV-6385, 2018 WL 1796548, at *2 (E.D.N.Y. Apr. 16, 2018) ("Second guessing the tactical and strategic choices made by counsel is seldom appropriate."). They are the types of claims the <u>Strickland</u> court warned about: "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential."). Taher therefore fails to establish that counsel's trial decisions fell below "an objective standard of reasonableness" under "prevailing professional norms" such that they were "outside the wide range of professionally competent assistance." <u>Id.</u> at 688, 690. He also fails to show that but for these decisions, the results of his trial would likely have been different. <u>Id.</u> at 687, 694. This ground for relief is therefore denied.

**2. Taher's improper-jury-instructions claim is barred by the mandate rule.**

In his second ground for relief, Taher simply repeats his claim that this Court's instructions concerning the CCE charge constructively amended the indictment and that the indictment should have contained more specific allegations. As explained above in Sections III (B)(1)(c) and (e), there is no merit to these arguments. In addition, the Second Circuit upheld this Court's CCE instructions on direct appeal, and Taher has made no showing why his claims should again be reviewed on collateral attack. <u>See</u> <u>Taher</u>, 663 F. App'x. at 30; <u>Cabrera v. United States</u>, 972 F.2d 23, 25 (2d Cir. 1992) (finding that a § 2255 motion "may not be employed to re-litigate questions which were raised and considered on direct appeal). This ground for relief is therefore denied.

### 3. Discovery is not required.

Taher includes a request for discovery in his motion.  As noted above, the party requesting discovery must provide reasons for the request, which must "include any proposed interrogatories and requests for admission, and must specify any requested documents."  Rule 6 (b).  The court may then grant discovery if it finds good cause to do so.  See Rule 6 (a).

Here, Taher has included only a *pro forma* request for discovery.  He has not explained why discovery is necessary, nor has he specified or proposed the type of discovery he seeks.  In any event, given that the record conclusively demonstrates that Taher is not entitled to relief, there is no basis to permit discovery.  This request is therefore denied.

### 4. No evidentiary hearing is required.

Taher requests the opportunity to advance his claims at an evidentiary hearing.  As indicated above, § 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  Rule 4 (b) also provides that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ."

Here, no evidentiary hearing is required because the motion and the record conclusively demonstrate that Taher is entitled to no relief under § 2255.  Consequently, this Court finds that no hearing is warranted or required.  See Orbach v. United States, 11 Cr. 111 (NRB), 2017 WL 5632815, at *7 (S.D.N.Y. Nov. 7, 2017) (denying request for a § 2255 hearing where "[t]he existing record is conclusive that petitioner is not entitled

to relief on any theory presented to [the court]").

**5. A certificate of appealability will not issue.**

For a certificate of appealability to issue, a petitioner must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253 (c)(2).  To make the required "substantial showing," Taher must establish that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002) (per curiam) (citations and internal quotation marks omitted).  Taher has made no such substantial showing of the denial of a constitutional right in this case.  A certificate of appealability will therefore not issue.

## IV. CONCLUSION

Having considered Taher's grounds for relief individually and cumulatively, and having presided over the trial of this matter, with opportunity to observe trial counsel first-hand, this Court finds that Taher has failed to carry his burden of showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to him] by the Sixth Amendment" or to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Harrington, 562 U.S. at 104 (quotations and citations omitted).  Taher's § 2255 motion must therefore be denied.

If Taher wishes to appeal, he must file a Notice of Appeal with the Clerk's Office, United States District Court, Western District of New York, within 60 days of the date of judgment in this action.  See Fed. R. App. P. 4 (a)(1)(B)(i).  Requests to proceed on appeal as a poor person, if any, must be filed with the United States Court of Appeals for

the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

## V. ORDERS

IT HEREBY IS ORDERED, that Petitioner's Motion to Vacate, Set Aside or Correct his Sentence under 28 U.S.C. § 2255 (Docket No. 592) is DENIED.

FURTHER, that this Court hereby certifies, pursuant to 28 U.S.C. § 1915 (a)(3) and Rule 24 (a)(3) of the Federal Rules of Appellate Procedure, that any appeal from this Decision and Order would not be taken in good faith and therefore leave to appeal as a poor person is DENIED. See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

FURTHER, that a Certificate of Appealability under 28 U.S.C. § 2253 is DENIED.

FURTHER, that the Clerk of Court is directed to CLOSE 18-CV-162S.

SO ORDERED.


Dated:     February 20, 2020
           Buffalo, New York

                                              s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                              United States District Judge